UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARGARET P. YETMAN,

                            Plaintiff,

                                                    1:12-CV-1670
v.                                                  (GTS/CFH)

CAPITAL DIST. TRANSP. AUTH., a/k/a Capital
Dist. Transit Auth.; and DAVID A. PALMER,
Individually,

                            Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

GLEASON DUNN WALSH & O'SHEA                    DANIEL A. JACOBS, ESQ.
  Counsel for Plaintiff                       RONALD G. DUNN, ESQ.
40 Beaver Street
Albany, NY 12207

JACKSON LEWIS P.C.                            CLEMENTE J. PARENTE, ESQ.
  Counsel for Defendants                      KRISTI M. RICH WINTERS, ESQ.
18 Corporate Woods Boulevard
Albany, NY 12211

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this employment civil rights action filed by Margaret P.

Yetman ("Plaintiff") against the Capital District Transportation Authority and David A. Palmer

("Defendants"), is Defendants' motion for summary judgment. (Dkt. No. 38.) For the reasons

set forth below, Defendants' motion is granted.

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Amended Complaint

Plaintiff filed her original Complaint in this action on November 9, 2012.  (Dkt. No. 1.)
She filed an Amended Complaint on January 22, 2013.  (Dkt. No. 13.)

Generally, Plaintiff's Amended Complaint alleges that, during her employment as a bus
driver between November of 2007 and July of 2010, Defendants interfered with her employment
and retaliated against her, based on her taking leave to undergo treatment for her own health
conditions, and to provide care and support (as a single parent) for her children's serious health
conditions and/or disabilities, resulting in her constructive discharge.  (*Id*.)

Based on these factual allegations, Plaintiff's Complaint asserts four claims against
Defendants: (1) a claim that Defendants unlawfully interfered with, restrained and/or denied
Plaintiff's rights in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§
2611 *et seq.*; (2) a claim that Defendants discriminated against Plaintiff based on her children's
disabilities in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§
12111 *et seq.*; (3) a claim that Defendant Capital District Transportation Authority ("CDTA")
discriminated against Plaintiff based on her children's disabilities in violation the New York
Human Rights Law ("Human Rights Law"), New York Executive Law § 296; and (4) a claim
that Defendant Palmer is individually liable under the Human Rights Law.  (*Id*.)

Familiarity with these claims, and the factual allegations supporting them, is assumed in
this Decision and Order, which is intended primarily for the review of the parties.  (*Id*.)

## B.     Parties' Briefing on Defendants' Motion for Summary Judgment

### 1.     Defendants' Memorandum of Law in Chief

Generally, in their memorandum of law, Defendants argue that they are entitled to judgment as a matter of law based on the current record for four reasons.  (Dkt. No. 38, Part 6 [Defs.' Memo. of Law].)  First, Defendant argues, Plaintiff's FMLA interference and retaliation claims fail as a matter of law for the following reasons: (a) as an initial matter, Plaintiff's FMLA claims fail because all of those claims (even those arising under her failure to be rehired) are barred by the governing limitations period of two years, given that a three-year limitations period is reserved for "willful" or reckless conduct, none of which occurred here; (b) in the alternative, Plaintiff's FMLA interference claim fails because she was afforded all rights to which she was entitled under the FMLA; and (c) moreover, Plaintiff's FMLA retaliation claim fails because she cannot establish that she suffered an adverse employment action as a result of her exercise of her FMLA rights.  (*Id.*)

Second, Defendant argues, Plaintiff's disability discrimination claims fail as a matter of law for the following reasons: (a) as an initial matter, the majority of Plaintiff's disability claims fail because they are time barred; (b) in the alternative, Plaintiff's written warnings and resignation do not constitute adverse employment actions; (c) moreover, Plaintiff was not disabled at the time of any alleged adverse employment actions; (d) furthermore, Plaintiff was not subject to an adverse employment action because of her disability; and (e) finally, there is no admissible record establishing that the legitimate nondiscriminatory reason for CDTA's employment decisions were a pretext for disability discrimination. (*Id.*)

Third, Defendant argues, Plaintiff's association disability discrimination claims fail as a matter of law for the following reasons: (a) as an initial matter, the Human Rights Law does not prohibit association disability discrimination; and (b) turning to Plaintiff's association disability discrimination claim under the ADA, that claim fails because she cannot establish that she suffered an adverse employment action, nor can she establish that any such adverse employment action was caused by her children's alleged disabilities. (*Id.*)

Fourth, Defendant argues, as a matter of law, Plaintiff's claim for individual liability against Defendant Palmer fails as a matter of law because Plaintiff cannot establish that Defendant Palmer either was an "employer" under the Human Rights Law or aided and abetted violations of the Human Rights Law. (*Id.*)

###	2.	Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff asserts two arguments. (Dkt. No. 41, Attach. 1 [Plf.'s Opp'n Memo. of Law].) First, Plaintiff argues, there are triable issues of fact as to whether Defendants constructively discharged Plaintiff in violation of the FMLA for the following reasons: (a) Defendant Palmer is an "employer" under the FMLA; (b) Defendants failed to timely designate Plaintiff's FMLA leave; (c) Defendants directly penalized Plaintiff for, and discouraged her from taking, FMLA protected leave; (d) Plaintiff's constructive discharge claims are timely, because record evidence of Defendants' continuous course of interference with, and retaliation for, Plaintiff's exercise of her FMLA rights between November 15, 2007, and her resignation on July 6, 2010, reveals a reckless disregard for her FMLA rights, warranting a three-year, not two-year, limitations period; and (e) Plaintiff was constructively discharged from CDTA employment. (*Id.*)

Second, Plaintiff argues, there are triable issues of fact as to whether Defendants refused to rehire Plaintiff in violation of the FMLA, ADA and Human Rights Law for the following reasons: (a) Defendants refused to rehire Plaintiff because Defendant Palmer considered her history of FMLA protected leave to be a "negative factor," in violation of the FMLA; and (b) Defendants refused to rehire Plaintiff because they misbelieved that her and her son Walter's disabilities would distract her from performing her job as a CDTA bus driver. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert two arguments. (Dkt. No. 47, Attach. 3 [Defs.' Memo. of Law].) First, Defendants argue, there is no genuine dispute of material fact precluding summary judgment as to Plaintiff's claim of constructive discharge in violation of the FMLA for the following reasons: (a) Plaintiff's FMLA claims are time barred, because (i) there is no admissible record evidence establishing that Defendant CDTA's conduct was reckless (especially given the evidence that Defendant CDTA approved Plaintiff's requests for FMLA leave of which it received sufficient notice for several years prior to her voluntary resignation), and (ii) there is no admissible record evidence establishing that Defendant Palmer was an "employer" as defined by the FMLA; (b) Plaintiff's FMLA interference claim must be dismissed for the alternative reason that she did not provide additional notice of her intention to take FMLA leave and, even if she did, she was afforded all of the rights to which she was entitled under the FMLA; (c) moreover, Plaintiff's FMLA retaliation claim must be dismissed for the alternative reason that she was not constructively discharged nor subjected to any other adverse employment action as a result of her exercise of her FMLA right. (*Id.*)

Second, Defendant argues, there is no question of fact precluding summary judgment as to Plaintiff's claim of failure to rehire in violation of the FMLA, ADA and Human Rights Law for the following reasons: (a) because of Plaintiff's reliance on inadmissible evidence such as double hearsay, there is no admissible record evidence establishing that Plaintiff's prior FMLA leave was a "negative factor" in Defendant Palmer's decision not to rehire her, which was caused by her overall work record, her attendance, her failure to report an incident on her bus, and personal issues between her and a supervisor other than Defendant Palmer; and (b) there is no admissible record evidence establishing that Defendants refused to rehire her because of her perceived disability or her son's alleged disability. (*Id.*)

### C. Statement of Undisputed Material Facts

The following material facts have been asserted and supported by Defendants in their Statement of Material Facts, and not denied in a matching numbered paragraph with a supporting record citation by Plaintiff in her response thereto, and thus admitted pursuant to Local Rule 7.1 of the Local Rules of Practice for this Court, as explained below in Part II.A. of this Decision and Order. (*Compare* Dkt. No. 38, Attach. 5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 41, at Part B [Plf.'s Rule 7.1 Response].)

### 1. Plaintiff's Employment with CDTA

1.  Plaintiff worked as a part-time driver for CDTA's Special Transit Available by Request ("STAR") Program from June 2000 until she resigned in November 2000.

2.  CDTA rehired Plaintiff as a Bus Operator in November 2004.

3.  Bus Operators, including Plaintiff, were covered by a Collective Bargaining Agreement ("CBA").

4.     David Palmer was Plaintiff's supervisor.  (*Compare* Dkt. No. 38, Attach. 5, at ¶ 4 [Defs.' Rule 7.1 Statement, citing record evidence that establishes above-stated fact] *with* Dkt. No. 41, at ¶ B.4 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].)

5.     When she came back to CDTA in 2004, Plaintiff received a copy of CDTA's employee handbook which contained its policies on Attendance, FMLA and Preventing Harassment in the Workplace.  Page 26 of the handbook, which is subtitled "**<u>OPERATING POLICY ON THE FAMILY AND MEDIAL LEAVE ACT</u>**" states as follows, in pertinent part:

> **FMLA requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to "eligible" employees for certain family and medical reasons.**
>
> . . .
>
> Unpaid leave must be granted for any of the following reasons:
>
> . . .
>
>> • *to care for the employee's . . . son or daughter . . . who has a serious health condition; or*
>> • *for a serious health condition that makes the employee unable to perform the employee's job.*
>
> **[T]he employee may be required to provide advance leave notice and medical certification. Taking of leave may be denied if requirements are not met.**
>
>> • *The employee ordinarily must provide 30 days advance notice when the leave is "foreseeable."*
>> • *An employer may require medical certification to support a request for leave because of a serious health condition, and may require second or third opinions and a fitness for duty report to return to work.*
>
> . . .

> If you have any questions about FMLA or would like to see the CDTA
> FMLA procedure manual, please contact your immediate supervisor or the
> Human Resources Department.

(*Compare* Dkt. No. 38, Attach. 5, at ¶ 5 [Defs.' Rule 7.1 Statement, citing record evidence that establishes above-stated fact] *with* Dkt. No. 41, at ¶ B.5 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].)

6.      In addition, at some point when Keith Strait was a union representative from 2007 to 2009, an FMLA notice was posted in the "crew room" of CDTA's garage in Schenectady, although Plaintiff did not see it there during that time.  (*Compare* Dkt. No. 38, Attach. 5, at ¶ 6 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 41, at ¶ B.6 [Plf.'s Rule 7.1 Response, denying fact but failing to support denial with accurate record citation, but a citation to record evidence in which she states that she concludes that "[t]here was nothing ever posted in Schenectady" because "I never saw it" "when I was working there," which evinces a lack of personal knowledge that is insufficient to create a genuine dispute of material fact].)

7.      On November 7, 2007, Plaintiff was terminated after she did not report an incident on her bus within 24 hours, as is usually required by CDTA's policies and procedures, because she left work early to attend to her son's medical condition and as a result was not focused on the requirement to report the incident.  (*Compare* Dkt. No. 38, Attach. 5, at ¶ 7 [Defs.' Rule 7.1 Statement, citing record evidence that establishes above-stated facts] *with* Dkt. No. 41, at ¶ B.7 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated facts].)

8.      After filing a grievance contesting the termination, Plaintiff was reinstated on December 15, 2007.

## 2.    CDTA's Attendance Policies and Procedures

9.      Given the important services that CDTA provides to the public, CDTA depends on its employees to have regular, dependable attendance habits.

10.     Pursuant to CDTA's Attendance Discipline Policy, "[s]ubstandard attendance will be defined as an employee having more than two (2) deviations per calendar month or more than twelve (12) occurrences in a twelve month period (rolling calendar)."

11.     The Policy defines a "deviation" as "missed time due to lateness, illness, or any unexcused absence from work resulting in lost time."

12.     An employee with substandard attendance will be subject to progressive discipline, including "(1) Verbal Warning (2) Written Warning (3) 1 Day Administrative Suspension (4) 5 Day Administrative Suspension & Final Warning (5) Termination."

13.     Further, a "miss" or "pattern of attendance deviations may accelerate or compress the corrective action steps."

14.     Pursuant to CDTA's Station Rules – General, if an operator does not notify the dispatcher in person or by personal phone call "10 minutes prior to scheduled report time" it will be marked as a "miss."

15.     According to the training that Defendant Palmer received from CDTA employees, approved FMLA leave is not considered in CDTA's disciplinary process for attendance. (*Compare* Dkt. No. 38, Attach. 5, at ¶ 15 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 41, at ¶ B.15 [Plf.'s Rule 7.1 Response, denying fact but failing to cite record evidence that controverts above-stated fact].)

16.     Plaintiff was at least constructively aware of CDTA's policies and procedures on attendance. (*Compare* Dkt. No. 38, Attach. 5, at ¶ 16 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citations] *with* Dkt. No. 41, at ¶ B.16 [Plf.'s Rule 7.1 Response, denying fact but failing to cite record evidence that controverts above-stated fact.)

17.     When Plaintiff called in, she always had to give the dispatcher a reason for her absence.

18.     As of at least December 2009, if an employee was calling in and the absence was for approved FMLA leave, all the employee needed to tell the dispatcher was "FMLA" and it would be recorded as such.

19.     By December 2009, Plaintiff was aware that, if her absence was covered under the FMLA, she would need to call and designate it as "FMLA."

### 3.     Plaintiff's Requests for FMLA Leave

20.     During her employment, Plaintiff made numerous requests for FMLA leave for her daughter Dorothy Yetman's ovarian cysts and for her son Walter Yetman's autism, seizure disorder and aggressive behavior.

21.     In each case that Plaintiff made a request for FMLA leave, and CDTA had documents for the request, CDTA approved the request. (*Compare* Dkt. No. 38, Attach. 5, at ¶ 21 [Defs.' Rule 7.1 Statement, asserting facts and supporting assertion with accurate record citation] *with* Dkt. No. 41, at ¶ B.21 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated facts].)

22.     Plaintiff admitted that sometimes she would call in and tell the dispatcher that it was a "sick day" instead of FMLA because she was embarrassed and did not want it to look like she was always taking time off for her children.

23.     She alleges that she would then bring documentation in to prove the absence should be treated as FMLA.

24.     Plaintiff also believed that, when she called in and said the reason for her absence was "family emergency," the dispatcher should have assumed it related to her FMLA leave.

   a. **Plaintiff's Requests for FMLA Leave for Her Own Medical Conditions**

25.     In November 2007, Plaintiff made a request for FMLA leave for a radical hysterectomy in connection with her cervical cancer diagnosis.

26.     CDTA approved Plaintiff's FMLA leave from November 15, 2007, to January 15, 2008.

27.     In April 2008, Plaintiff made a second request for FMLA leave for her medical condition of morbid obesity, which required abdominal surgery.

28.     Plaintiff was granted additional FMLA leave from March 20, 2008, through April 21, 2008.

29.     In May 2008, Plaintiff made a third request for FMLA leave.

30.     Plaintiff was granted additional FMLA leave for her medical condition from May 7, 2008, through June 16, 2008.

31.     Plaintiff never made any subsequent requests for FMLA leave relating to either of her medical conditions.  (*Compare* Dkt. No. 38, Attach. 5, at ¶ 31 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citations] *with* Dkt. No. 41, at ¶ B.31 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated facts].)

**b.     Plaintiff's Requests for FMLA Leave for Her Daughter Dorothy Yetman's Ovarian Cysts**

32.     In March 2007, Plaintiff requested intermittent FMLA leave to care for her daughter Dorothy's ovarian cysts.

33.     Plaintiff was granted intermittent FMLA leave to care for her daughter Dorothy's ovarian cysts beginning on March 12, 2007.

34.     No specific end date was given.

**c.     Plaintiff's Requests for FMLA Leave for Her Son Walter Yetman's Autism, Seizure Disorder and Aggressive Behavior**

35.     Plaintiff first requested intermittent FMLA leave to care for her son Walter's autism, seizure disorder and aggressive behavior in March 2007.

36.     Plaintiff was granted intermittent FMLA leave to care for her son Walter's conditions as necessary.

37.     Plaintiff was informed that she needed to provide recertification.

38.     In January 2009, Plaintiff again requested intermittent FMLA leave to care for her son Walter's autism, seizure disorder, and aggressive behavior.

39.     CDTA granted Plaintiff's request for intermittent FMLA leave beginning January 6, 2009.

40.     While there was no specific end date given for this leave, Plaintiff was informed that she needed to provide periodic reports to CDTA and recertification.

41.     In December 2009, Plaintiff's son Walter began living at Eagleton, a residential school in Great Barrington, New York, and Plaintiff saw him only twice a month between December 2009 and July 2010.

**4. Plaintiff's Receipt of Discipline for Her Excessive Absenteeism**

42.  Plaintiff admits that there were times when she was absent from work and it was not related to her FMLA leave.

43.  Plaintiff had attendance issues throughout her employment and had received written warnings and a one-day administrative suspension for her attendance in 2006.

44.  Plaintiff claims that Defendant Palmer would come in and look at her as if to say, "Oh you came in today," and made comments to her about her attendance, including "Why can't you make it to work."

45.  Plaintiff also claims that her co-workers would give her looks and make comments under their breath that she was always taking off for her kids and they would have to do her work.

46.  Plaintiff admits that she never complained about this conduct pursuant to CDTA's Policy Statement on Preventing Harassment in the Workplace.

47.  On March 10, 2009, Plaintiff received a written warning for her attendance issues.

48.  According to the written warning, Plaintiff had "in excess of 12 deviations in the last 12 months" and also had a "pattern of absence by marking off six Fridays in the last 12 month period and by extending [her] scheduled days off on six occasions."

49.  Also in the written warning, Plaintiff was warned that, if she did not improve her attendance, she would be subject to "increased disciplinary action including suspension and/or termination of [her] employment."

50.  After speaking to Defendant Palmer about the written warning, Plaintiff just accepted the warning and did not speak with her union representative about it.  (*Compare* Dkt.

No. 38, Attach. 5, at ¶ 50 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 41, at ¶ B.50 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].)

51.     Despite receiving a written warning, Plaintiff did not improve her attendance.

52.     On August 12, 2009, Plaintiff was issued a one-day administrative suspension because she had 12 deviations in the past 12 months, two of which were misses.

53.     Plaintiff was also given a copy of CDTA's Attendance Discipline Policy and Operating Policy Statement on Attendance, with the intent of ensuring that she was aware of CDTA's policies on attendance.

54.     Plaintiff signed the suspension letter and initialed that she "acknowledge[d] and agree[d] with the actions taken and [understood] the consequences that will result from future violations."

55.     Plaintiff was also informed that, if she disagreed with the suspension, she had the right to pursue it under Article 29 of the CBA.

56.     When Plaintiff's attendance did not improve, she was issued a five-day administrative suspension and final warning on March 16, 2010.

57.     The final warning stated that Plaintiff had four attendance deviations in the past 12 months and also had a measurable pattern of attendance issues, extending her weekend on four occasions.

58.     Plaintiff was further warned that, if she did not make an immediate improvement in her attendance, she would be subject to termination.

59.     Plaintiff signed the final written warning and acknowledged that, if she disagreed with the final written warning, she had the right to pursue it under the CBA.

60.     Plaintiff never filed a grievance disputing the progressive discipline she received.

### 5.     Plaintiff's Resignation

61.     On June 26, 2010, Plaintiff failed to call the dispatcher on time and thus was considered a miss.

62.     In her deposition, Plaintiff admitted that "it was ultimately [her] fault" and that she did not call in on time because she had an issue with her daughter Dorothy, which she does not claim entitled her to FMLA leave.

63.     Nevertheless, Plaintiff still provided Defendant Palmer with phone records of the time of her call.

64.     Defendant Palmer asked to meet with Plaintiff because there was a disagreement over the time of her call.

65.     The phone records that Plaintiff provided did not coincide with CDTA's phone records.  As a result, when Plaintiff could not access her phone records online in Defendant Palmer's office, he asked her to provide an official phone record from her service provider.

66.     Thereafter, Plaintiff submitted a resignation letter to Defendant Palmer dated July 5, 2010, resigning effective July 6, 2010.

67.     In her resignation letter, Plaintiff stated that she decided to resign because "[t]he constant stress of me possibly losing my job because of an autistic child and other family and legal issues, has been overwhelming."

### 6.    Plaintiff's Applications for Reemployment

68.    After Plaintiff's resignation, Defendant Palmer made the decision to state "NO" under "Eligible for Rehire" in CDTA's Human Resource Payroll Change Form.

69.    Defendant Palmer made this decision based on Plaintiff's overall work record, her attendance, her failure to report the incident on her bus, and the personal issues, including "significant animosity," between her and another supervisor, Christine Plott. (*Compare* Dkt. No. 38, Attach. 5, at ¶ 69 [Defs.' Rule 7.1 Statement, asserting fact and supporting assertion with accurate record citation] *with* Dkt. No. 41, at ¶ B.69 [Plf.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].)

70.    In December 2010, Plaintiff submitted an application for Bus Operator and, in June 2011, she submitted applications for Service Technician (Cleaner) and Customer Service Operator/Call Taker.

71.    When Defendant Palmer was contacted by Human Resources about hiring Plaintiff, he told them that she was not eligible for rehire.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[1] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of

---

[1] *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

failing to properly respond to the motion for summary judgment.)[2]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[3]

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the movant's motion does is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement.[4]

---

[2]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[3]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[4]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[5] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.      Standards Governing Plaintiff's Claims**

Because the parties have (in their memoranda of law) indicated their understanding of the correct legal standards governing Plaintiff's claims and Defendants' defenses, the Court will not repeat those standards in this Decision and Order, which (again) is intended primarily for the review of the parties.

---

[5]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

## III.    ANALYSIS

After carefully considering the matter, the Court grants Defendants' motion for each of the alternative reasons stated in Defendants' memoranda of law.  *See, supra,* Part I.B. of this Decision and Order.  To those reasons the Court adds four points.

First, in response to at least 31 paragraphs of facts asserted by Defendants in their Rule 7.1 Statement, Plaintiff denies certain "implications" purportedly contained therein.  (*See, e.g.,* Dkt. No. 41, at ¶¶ 5, 10, 11, 12, 13, 17, 18, 19, 22, 24, 26, 28, 30, 33, 36, 37, 39, 40, 41, 42, 43, 46, 51, 53, 54, 55, 56, 58, 59, 61, and 67.)  Of course, "arguing over the possible implications stemming from an otherwise undisputed fact does not render that fact in dispute." *Blakes v. Illinois Bell Tel. Co.*, 11-CV-0336, 2015 WL 135028, at *1 (N.D. Ill. Jan. 9, 2015).  This is because the summary judgment procedure is based on the *assertion* of facts and their disputation, not the *implication* of facts and their disputation.  *See, e.g.,* Fed. R. Civ. P. 56(e) (setting forth consequences "[i]f a party fails to properly support an *assertion of fact* or fails to properly address another party's *assertion of fact*") (emphasis added); N.D.N.Y. L.R. 7.1(a)(3) (requiring that facts be "set forth," "listed" and "assert[ed]"); *cf. Habben v. City of Fort Dodge*, 472 F. Supp. 2d 1142, 1147, n.2 (N.D. Iowa 2007) ("Even if it were proper for the plaintiff to object to 'implications,' the defendants' statement cannot give rise to the 'implication' that the plaintiff finds objectionable, because the defendants' statement does not address the plaintiff's hiring at all.").  As a result, to the extent Plaintiff responds to Defendants' properly supported factual assertions solely by denying "implications" contained therein, the Court deems the factual assertions admitted.

Second, in response to facts asserted in at least 29 paragraphs contained in Defendants' Rule 7.1 Statement, Plaintiff attempts to incorporate by reference record citations contained in a 34-page outline that precedes her Rule 7.1 Response. (*See, e.g.,* Dkt. No. 41, at ¶¶ 9, 10, 11, 12, 17, 18, 21, 22, 24, 26, 28, 30, 36, 37, 42, 43, 48, 49, 51, 52, 54, 56, 57, 61, 62, 66, 67, 69 and 70.) This unusual practice violates the spirit, if not the letter, of Local Rule 7.1, which requires that "[e]ach denial . . . set forth a specific citation to the record where the factual issue arises," not a citation to a portion of an outline that in turn contains many factual assertions and record citations, some of which are completely immaterial to the fact originally asserted in the Rule 7.1 Statement. N.D.N.Y. L.R. 7.1.(a)(3). Nonetheless, out of solicitude to Plaintiff as a civil rights litigant, the Court has tracked down the record cites in the outline and carefully reviewed the evidence cited therein. However, it does not save her claims from dismissal.

Third, Plaintiff's timeliness argument hinges on, *inter alia*, whether Defendant CDTA possessed "actual knowledge" of the legal requirement that it grant her FMLA leave. *See, supra,* Part I.B.2. of this Decision and Order. (*See also* Dkt. No. 41, Attach. 1, at 24 [attaching page "18" of Plf.'s Opp'n Memo. of Law].) Plaintiff argues that such actual knowledge existed because (1) Defendants "knew the law of [the] FMLA" and (2) Defendants "were well aware of [Plaintiff's] and her children's medical conditions and need for leave (including FMLA leave) to care for those conditions between November 15, 2007 and January 6, 20[10]." (Dkt. No. 41, Attach. 1, at 225 [attaching page "18" and "19" of Plf.'s Opp'n Memo. of Law].) The problem is that the record evidence cited by Plaintiff establishes not recklessness but due care by Defendant CDTA for Plaintiff's rights under the FMLA. At the very most, to the extent that Defendant CDTA received certain communications from Plaintiff in the past that could reasonably be

construed as transforming other communications from her in the future as FMLA requests, and to the extant that Defendant CDTA did not treat those transformed communications as FMLA requests, the evidence suggests only ordinary negligence.[6]

Fourth, even if the Court were to find a genuine dispute of fact regarding whether there was *ever* an FMLA notice posted in the "crew room" of CDTA's garage in Schenectady, the Court would find such a dispute to be immaterial to Defendants' motion. This is because, even if Plaintiff had a private right of action for a failure to post an FMLA notice (which she does not),[7] it is undisputed that, when Plaintiff came back to CDTA in 2004, she received a copy of CDTA's employee handbook which contained, *inter alia*, its Operating Policy on the Family and Medical Leave Act. *See Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 430 (S.D.N.Y. 2004) (finding that plaintiff failed to make out an FMLA claim for interference based on lack of notice because, inter alia, "it appears plaintiff did have notice of [defendant's] policy concerning FMLA leave, which appears in [defendant's] online employee handbook"). In the alternative, the Court finds that Plaintiff has not shown that any lack of notice failure somehow affected her leave. *See Geromanos*, 322 F. Supp. 2d at 430-31 ("[T]he right to notice under the act is not an

---

[6] It should be noted that, according to Plaintiff's own deposition testimony, her daughter Dorothy's pregnancy (which Anthony Bonaquisto was advised presented "some issues," and which Randy Fitch was advised was "high risk") did not even start until "sometime in January-February of 2010."

[7] *See Gilmore v. Univ. of Rochester Strong Mem'l Div.*, 654 F. Supp. 2d 141, 147 (W.D.N.Y. 2009) ("[I]t is well settled that an employee has no private right of action where an employer has failed to post the [required FMLA] notice."); *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, 07-CV-0235, 2008 WL 111174, at *5 n.14 (N.D.N.Y. Jan. 7, 2008) (DiBianco, M.J.) (noting that "the FMLA provides a statutory penalty for employers who fail to willfully fail to post notice of the pertinent FMLA provisions," and "itself[] does not impose a private right of action by the employee") (emphasis removed).

independent right giving rise to suit where failure to notify in no way affected the employee's leave.").

For all of these reasons, the Court grants Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 38) is granted.

The Clerk is directed to issue a Judgment for Defendants and close this action.

Dated: July 23, 2015
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge